NO. 22-30670

_____

# In the United States Court of Appeals
# for the Fifth Circuit

Sharon Lewis
*Plaintiff-Appellant*

v.

Garret Danos, Robert Yarborough, Stanley Jacobs, Joe Alleva, Miriam Segar,
Verge Ausberry, Robert Barton, Vicki Crochet and Shelby McKenzie
*Defendants-Appellees*

_____

On Appeal from the United States District Court
for the Louisiana Middle District

_____

BRIEF OF APPELLANT

_____

Larry English, LSB No. 22772
LARRY ENGLISH, ATTORNEY AT LAW
423 W. 127 Street, 7th Floor
New York, New York 10027
917-531-3909 (office)
englishlaw2008@gmail.com

## CERTIFICATE OF INTERESTED PERSONS

Appellant certifies that the following listed person and entities described in the fourth sentence of Rule 28.2.1 have interest in the outcome of this case. These representations are made in order for the judges of this Court may evaluate possible disqualification or recusal:

1) **Plaintiff-Appellant**

   Sharon Lewis

2) **Defendants-Appellants**

   Garrett Danos; Robert Yarborough; Stanley Jacobs; Joe Alleva;

   Miriam Segar; Verge Ausberry; Robert Barton; Vicki Crochet;

   Shelby McKenzie

3) **Counsel for Plaintiff-Appellant**

   Larry English; Albert Van-Lare

4) **Counsels for Defendants-Appellees**

   Rodolfo Jesus Aguilar Jr., Ms. Susan Brooke Barnett-Bernal,

   Joseph Elton Cullens, Jr., Jimmy Roy Faircloth Jr.

   Michael L. McConnell, Darren A. Patin, Robin Anne Sylvester,

   John Carroll Walsh, Jay C. Zainey Jr., John C. Walsh, Mary Ann White,

   Jeffrey K. Cody, Michael A. Patterson, Seth F. Lawrence, Magadalen

   Blessey Bickford, Camille R. Byrant, Barbar Bell Melton, Mary Katherine

Price, Susan W. Furr, Shelton Dennis Blunt, Molly C. McDiarmid

> */s/ Larry English*
> **LARRY ENGLISH**
> **Attorney of record for Appellant**
> **Sharon Lewis**

**Statement Regarding Oral Argument**

Plaintiff-Appellant Sharon Lewis (Lewis) request oral arguments as she believes it could significantly aid the decisional process in this case.

# Table of Contents

Certificate of Interested Persons…………………………………2

Statement Regarding Oral Argument……………………………..4

Table of Contents………………………………………………5

Table of Authorities……………………………………………7

Jurisdictional Statement………..………………………………9

Issues Presented…………………………………………………..9

Statement of Case……………………………………………...11

Summary of Argument……………..………………………16

Argument……………………………………………….……16

I.     Standard of Review………………………..………….…16

II.    Motion to Dismiss Standard…………………….…...…16

III.   The District Court erred when it dismissed
       Appellant's RICO claims before April 8 2017
       as time barred………………………………………...17

       A. Equitable tolling applied to Appellant's RICO claims…...17

          1. Crochet mislead Appellant about her legal rights…......18

       B. Appellant's RICO claims tolled by fraudulent
          Concealment…………………………………………..22

          1. Appellees concealed facts that formed the basis of
             Appellant RICO claims…………………………..……27

       C. Appellant took reasonable steps to discover claims……..28

D. Appellees fraud was self-concealing………………..…..29

E. Appellees conduct was a concealment………………..…….30

F. Rule 9 RICO…………………………………….............30

IV.  The District Court dismissal of Appellants RICO
     claims against Miles, Danos, Yarborough, Jacobs,
     and Jenkins was an  error…………..……………...……33

     A. The District Court denial of Appellants motion
        to alter or amend judgment was an error……………34

V.   The District Court dismissal of Appellant's RICO
     claims against all Appellees was an error…....…..………37

     A. Appellant proved causation……..………..….……....41

     B. § 1341 and §1343 violations………..….…..….…..…43

     C. Fraudulent PM investigation…………………….…..44

     D. § 1512 (a)(2)(A) and §1512(a)(2)(B)(i) …………..…46

     E. District Court denial of second motion to alter
        or amend judgment was an error……………………….48

VI.  Conclusion……………………………...……….....…..…48

VII. Certificate of Service………………..………………..…49

VIII. Certificate of Compliance……………………..….…..……49

Table of Authorities

## CASES

*Abraham v. Singh*, 480 F.3d 351, 357 (5ᵗʰ Cir. 2007) ...............................................30

*Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 675 (5ᵗʰ Cir. 2015)……………...…30,38

*Bank One, Texas, N.A. v. F.D.I.C.*, 16 F. Supp. 2d 698, 713 (N.D. Tex. 1998) .....29

*Beck v. Prupis*, 529 U.S. 494, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000) ...............32

*Boyle v. United States,* 556 U.S. 938……………………………………………..29

*Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 428 (1965)) ....................................13

*Chaney v. Dreyfus Service Corp.*, 595 F.3d 219, 239 (5ᵗʰ Cir. 2010) ....................30

*Chapman & Cole v. Itel Container Int'l*, 865 F.2d 676, 683–85 (5th Cir. 1989) ...27

*Coleman v. Johnson*, 184 F.3d 398 (5th Cir. 1999) ...............................................14

*Crowe v. Henry* , 115 F.3d 294, 298 (5th Cir. 1997)……………………………35,40

*Dale v. Frankel*, 131 F. Supp. 2d 852, 860 (S.D. Miss. 2001)...............................30

*Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 280 (1998)........................16

*Granger v. Aarons*, 636 F.3d 708, 712 (5ᵗʰ Cir. 2011)..........................................14

*Grove City College v. Bell*, 465 U.S. 555, 574-575 (1984)....................................26

*Hemi Grp. LLC v. City of New York*, 130 S.Ct. 983,989-990 (2009) ....................33

*Holmes v. Securities Investor* 503 U.S. 258 (1992). ..............................................33

*Hyde v. United States*,225 U.S. 347, 369, 32 S.Ct. 793, 56 L.Ed. 1114 (1912)) ....30

*In re Pool Prods. Distribution Mkt. Antitrust Litig.*, 940 F.Supp.2d 367, 402 (E.D.
La. 2013)................................................................................................................25

*Joseph v. Bach & Wasserman LLC,* 487 F. App'x 173  (5ᵗʰ Cir. 2012)..................23

*Kenne Corp. v. Int'l Fid. Ins. Co.*, 561 F. Supp. 656,665 (N.D. Ill. 1982) .............31

*Kenny Jacoby v. Galligan* 700649…………………………………………………22

*Klehr v. AO Smith Corp.*, 521 US 179, 196 (1997)................................................24

*Lambert v. United States*, 44 F.3d 296, 298 (5th Cir. 1995) ..................................13

*Lamont v. Bennet*, 172 So. 3d 620, 637, 638 (La. 2015)....................................8, 18

*Lewis v. LSU* et al, 708092 ....................................................................................28

*Mann v. Adams Realty Co., Inc.,* 556 F.2d 288, 296 (5th Cir. 1977).....................24

*Molina-Aranda v. Black Magic Enters.*, *L.L.C.*, 983 F.3d 779 (5th Cir. 2020) ......27

*Pechon v. La. Dep't of Health and Hospitals*, No. 08-0664, 2009 WL 2046766, at
*4 (E.D. La. July 14, 2009) ..................................................................................29

*Pelletier v. Zweifel*, 921 F.2d 1465, 1522 (11th Cir. 1991)....................................27

*Petrobras Am., Inc. v. Samsung Heavy Indus*. Co., 9 F.4th 247 (5th Cir. 2021) ....19

*Rashidi v. American Presidential Lines*, 96 F.3d 124, 128 (5th Cir. 1996)............14

*Reeb v. Economic Opportunity Atlanta, Inc*., 516 F.2d 924,930 (5ᵗʰ Cir.
1975).16,29

*Rotella v. Wood*, 528 U.S. 549, 560 (2000)...........................................................14

*Salinas v. United States* 522 U.S. 52 (1997) ............................................29

*Smith v. Our Lady of the Lake Hosp*., Inc., 960 F.2d 439, 444 (5th Cir. 1992) ......27

*Smith v. Our Lady of the Lake Hosp*., Inc., 960 F.2d 439, 445 (5th Cir. 1992) ......39

*Smith v. United States* 568 U.S. 106, 113 (2013) ....................................30

*State of Tex. v. Allan* at 1532 (5th Cir. 1988) ..........................................29

*State of Tex. v. Allan* F.2d 1526 1532 (5th Cir.)

   (2008)…………………………………………………..19, 20,25,26,29

*Sullo v. Kubosh*, 616 S.W. 3.d 869, 898 (Tex. App. 2020) ....................................14

     .................................................................................................. `

*U.S. v. Delgado,* 401 F.3d 290, 296 (5th Cir. 2005) ................................................30

*United States v. Bedoy*, 827 F.3d 495, 510 (5th Cir. 2016)....................................35

*United States v. Stalnaker*, 571 F.3d 428, 436 (5th Cir. 2009) ................................30

*v.* 23, 24

Venegas-Hernandez v. Sonolux Records, 370 F.3d 183, 195 (1st Cir. 2004) ........29

*Waltman v. Int'l Paper Co*., 875 F.2d 468, 473 (5th Cir.1989)..............................31

*Warden v. Barnett,* 252 F.3d 1356 (5th Cir. 2001)....................................................23

*Waste Management of Louisiana v. River Birch, Inc*., 920 F.3d 958  (5th Cir. 2019)

     ..................................................................................................33

*Whelan v. Winchester Prod. Co* ., 319 F.3d 225, 228 (5th Cir. 2003) ...................35

## STATUTES

§ 1341 .......................................................................................................39

§ 1512 (a)(2)(A) ......................................................................................42

§ 1512 (c )(2)........................................................................................36, 41

§ 1512 (c)(1 ) ...........................................................................................35

§1343 .......................................................................................................39

§1512(a)(2)(B)(i)......................................................................................42

§1512(c )(1)...............................................................................................38

§1512(c )(2)...............................................................................................41

§1964(c)....................................................................................................32

12(b)(6)........................................................................................28, 35, 38, 41

1512 (c)(2)................................................................................................35

Rule 11 .....................................................................................................28

Rule 59(e)..................................................................................................31

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1292 because it is an appeal of an Final Judgment that granted Appellees 12(b)(6) motion to dismiss Lewis RICO claims. Lewis  timely appealed by filing her notice of appeal within 30 days of the district court's order of September 29, 2022.

## ISSUES PRESENTED

This RICO raises questions regarding the application of equitable tolling and causation to Appellant's RICO claims.

1. Was the District Court dismissing Appellants RICO claims  not discovered before April 8, 2017 was an abuse of discretion?

    A. Did Appellant alleged sufficient fact to show that the doctrine of equitable tolling applied to her RICO claims?

       1. Did the Appellees mislead Appellant about the nature of her legal rights?

    B. Did the Appellant allege sufficient facts to show the Appellees took affirmative steps to conceal their RICO conduct that injured Appellant?

       1. Did Appellees fraudulently concealed facts that formed the basis of Appellant's RICO claims?

    C. Did Appellant take reasonable steps to discover her legal right?

D. Was the Appellees fraud self-concealing?

E. Was Appellees conduct a concealment?

F. Should Appellant's RICO claims be found untimely for following for Following the requirements of Federal Rule 9 heightened pleading requirements for filing RICO claims.

2.Was the District Court ruling dismissing Appellant's RICO claims against Miles, Danos, Yarborough, Jacobs and Jenkins an manifest legal error?

A. Was the District Court ruling denying Appellants motion to alter or amend judgment an abuse of discretion?

3. Was the District Court ruling at the 12(b)(6) stage that Appellant did not show that her RICO injuries were directly and proximately caused by Appellees RICO conduct an abuse of discretion?

A. Did Appellant state a plausible RICO claim that Appellees violation of 1512(c)(1) and 1512(c )(2) was the direct and proximate cause of her RICO injuries?

B. Did Appellant state a plausible claim that Appellees fraudulently wire and mail communications were the direct and proximate cause of her RICO injuries?

C. Did Appellant state a plausible claim that Ausberry and Segar violation of §1512(c)(2) was the direct and proximate cause of Appellant's RICO

injuries?

    D. Did Appellant allege sufficient facts to state a plausible claim that Ausberry and Miles violation of 1512(a)(2(A) and 1512(a)(2)(B)(i) was the direct and proximate cause of her RICO injuries?

    E. Was the District Court dismissal of Appellant's July 12, 2022 motion to alter or amend judgment a manifest legal error and abuse of discretion?

## STATEMENT OF CASE[1]

In July 2012 Appellant reported to Miriam Segar (Segar) that LSU Head Football Coach Les Miles (Miles) had sexually harassed Student 1.[2] Appellant also reported to Segar that Miles had threatened her employment multiple times and had promised Student 1 he would give her Appellant's job if she had sex with him. Segar then reported Miles conduct to LSU Athletic Director Joe Alleva (Alleva) and senior athletic officials Mark Ewing, Verge Ausberry (Ausberry) and Wendy Nall. Segar notified Taylor Porter lawyers Vicki Crochet (Crochet) and Robert Barton (Barton) and asked them to investigate Appellant for confronting Miles with Student 1 about his conduct.[3] Crochet and Barton law partner Shelby McKenzie was acting as LSU's General Counsel.[4]

---

[1] Appellant adopts the procedural history in the relevant District Courts Order and Reasons.
[2] R.Doc 304-5. Appellant co-worker Yael Lofton also reported to Segar that Student 1 reported to her that Miles was sexually harassing her. Yael also reported that Miles was subjecting her to a hostile work environment
[3] R.Doc. 295 p.5 ¶3
[4] ROA.6182 ¶3

Alleva met with Miles on July 30, 2012 and advised Miles to refrain from hiring student workers, not to have any personal communications "(texts, phone calls)" and not meet independently with female student workers.[5] Alleva did not address Appellant's complaints with Miles.[6] Neither Alleva, Segar or Ausberry reported Appellant's complaint to LSU Human Resources per the existing PS-73 policy.[7]

In February 2013 Appellant reported that Miles was sexually harassing Student 2.[8] LSU President William Jenkins (Jenkins) brought in Crochet and Barton to conduct a Title IX investigation of Miles.[9] On March 1, 2013 Crochet, Barton and Segar began an investigation of Miles.[10] On May 15, 2013 Garrett Danos (Danos), Robert Yarborough (Yarborough), Stanley Jacobs (Jacobs), Alleva, Segar, Crochet and Barton (herein after referred to as "Appellees") met to discuss the Miles Investigation.[11] At that meeting the Appellees agreed that the "Miles Report"[12] would be kept off-site in Taylor Porter law offices. The Appellees specifically agreed:

" Following a comprehensive discussion of the attachments, all copies of the

---

[5] R.Doc.304-5 p.3
[6] R.Doc. 304 p.11 ¶2
[7] R.Doc. 304-5 p. 5-7
[8] ROA.5873 ¶6
[9] ROA. 5874 ¶1, ROA.6088
[10] ROA.6127
[11] *See* Taylor Porter Memo To File ROA.6087; ROA.5874 ¶5
[12] ROA.6087 - 6119

attachments were returned to Taylor Porter to maintain in its file." [13]

On August 29, 2012 Alleva, Crochet, Barton and Miles executed a Directive Letter (herein after referred to as the "Miles Directive Letter" or "MDL").[14] Alleva, Crochet, Barton and Miles agreed in the MDL:

> "The original and all copies of this letter will be maintained in the files of your law offices and the undersigned counsel law offices only. Miles, his counsel, LSU and its counsel, agree to keep this letter (and its content) confidential unless compelled to divulge it by final order of a court of competent jurisdiction; any such order shall be contested by LSU's counsel and, at Miles option, Miles' undersigned counsel."[15]

Alleva, Barton, Crochet and Miles also agreed that if either party is served with a public documents request "*the recipient of the request shall provide notice and a copy of the request to the other party and counsel for the other party within twenty-four (24) hours*."[16]

Sometime thereafter, Appellant was asked to meet with Crochet to discuss her complaints against Miles.[17] At the meeting she asked "what happens next" and was told that Miles had not violated any laws.[18] From 2013 until her termination in January 2022, Appellant was denied promotions, pay raises and bonuses in retaliation for reporting Title IX complaints.

---

[13] ROA.6087 ¶2
[14] ROA.6015-6107
[15] ROA. 6106 ¶5
[16] Id.
[17] ROA.5787 ¶ 165
[18] Id.

On November 20, 2020 *USA Today* published an article titled "LSU mishandled sexual misconduct complaints against student, including student athletes."[19] In response to that article LSU hired the law firm Husch Blackwell to conduct an independent review of various Title IX-related incidents.[20]

On December 14, 2020 *USA Today* submitted a public document request for a copy of the Miles Report.[21] The LSU Board of Supervisors (hereinafter referred to as "BOS") responded that the Miles Report was not a public document.[22] On January 91, 2021 *USA Today* filed a writ of mandamus in 19th JDC, East Baton Rouge Parish requesting the state court order the release of the Miles Report.[23] Per the August 29, 2013 MDL, the BOS directed that Miles be notified of the *USA Today* public records request.[24] Peter Ginsberg (Ginsberg), Miles attorney filed a petition of intervention to stop the release of the Miles Report.[25]

On March 4, 2021 the Miles Report was released to *USA Today* and the public.[26] On March 5, 2021 LSU released the Husch Blackwell Report. The release of the Miles Report and Husch Blackwell Report was covered extensively by local

---

[19] ROA.5826
[20] Id.
[21] ROA.5804 ¶ 232
[22] Id.
[23] Id.
[24] ROA.5805 ¶ 233
[25] Id.
[26] ROA.6086

and national media.[27]

On April 8, 2022 Appellant filed a complaint in the Middle District of
Louisiana alleging in part that she was injured by Appellees RICO Conduct.
Appellees filed 12(b)(6) motions to dismiss Appellant's RICO claims. On
December 2, 2021 the District court dismissed Appellant's RICO claims against
Danos, Yarborough, Jacobs Miles and Jenkins.[28] On December 17, 2021 Appellant
filed a Rule 59(e) motion to alter or amend judgment. On January 19, 2022 the
District Court denied Appellant's motion to alter or amend judgment. On March 3,
2022 Appellant filed a motion to leave to file a Second Amended Complaint (SAC)
and Second Amended RICO case statement. On March 4, 2022 the court granted
Appellant's motion to leave. Barton, Crochet, McKenzie, Ausberry, Segar and
Alleva filed 12(b)(6) motions to dismiss Appellant's remaining RICO claims. On
June 16, 2022 the District Court granted Appellees motion to dismiss all of
Appellant's RICO claims with prejudice. On July 12, 2022 Appellant filed a Rule
59(e) motion to alter or amend judgment. On September 29, 2022 the District
Court denied Appellants Rule 59(e) motion and issued a final judgment
dismissing all of Appellant's RICO claims with prejudice. On October 18, 2022
Appellant filed this appeal.

---

[27] https://www.theadvocate.com/baton_rouge/sports/lsu/article_0f178d48-7dd5-11eb-9ec9-
3733426e4ee0.html
[28] Appellant voluntarily dismissed her RICO claims against Jenkins with prejudice.

## Summary of the Argument

Appellants has alleged sufficient facts to show that equitable tolling and fraudulent concealment applies to her RICO claims. The District court ruling at the 12(b)(6) stage that Appellant did not state a plausible claim that Appellees RICO conduct was the direct and proximate cause of her RICO injuries was an abuse of discretion.

## Argument

### I.    Standard of Review

A denial of a motion to dismiss is subject to *de novo* review.[29]

### II.    Motion To Dismiss Standard

In ruling on a 12 (b) (6) motion, the court must accept well-plead facts as true and view them in a light most favorable to plaintiff. *Collins v. Morgan Stanley Dean Witter*, 224 F. 3d 496, 498 (5th Cir. 2000). Plaintiff's complaint "need not contain detailed   factual allegations," however, she must allege sufficient facts   "to state a claim to relief that is plausible on its face." *Colony Ins. Co. v. Peachtree Constr*., Ltd., 647 F. 3d 248, 252 (5th Cir. 2011) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that Defendants are liable for the misconduct alleged in plaintiff RICO claims. *Ashcroft v. Iqbal* , 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at

---

[29] *Waste Management v. River Birch, Inc*. 920 F.3d 958 (2019)

556). Nevertheless, "a well-pleaded complaint may proceed even if it strikes a savvy Judge that actual proof of those facts are improbable, and that a recovery is very remote and unlikely." Id. At 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

### III. The District Court ruling that Appellant's civil RICO claims against the individual defendants based on injuries that were discovered, or should have been discovered, before April 8, 2017 are time barred is an abuse of discretion.[30]

#### A. Equitable tolling

The doctrine of equitable tolling preserves a Plaintiff's claim when strict application of the statute of limitations would be inequitable. *Lambert v. United States*, 44 F.3d 296, 298 (5th Cir. 1995) (citing *Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 428 (1965)). Consistent with this principle, civil RICO claims may also be "subject to equitable principles of tolling." *Rotella v. Wood*, 528 U.S. 549, 560 (2000). Equitable tolling applies principally where the Plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights. *Coleman v. Johnson*, 184 F.3d 398 (5th Cir. 1999) (citing *Rashidi v. American Presidential Lines*, 96 F.3d 124, 128 (5th Cir. 1996); *Sullo v. Kubosh*, 616 S.W. 3.d 869, 898 (Tex. App. 2020)[31]

This Court in *Granger v. Aarons*, 636 F.3d 708, 712 (5th Cir. 2011) described

---

[30] ROA.3892-3894

[31] The Court found that were Appellant's alleged they did not learn the nature of their RICO injuries until defendants filed court documents, Defendants had failed to establish a limitation defense.

at least three bases for equitable tolling: (1) the pendency of a suit between the same parties in the wrong forum; (2) Appellant's unawareness of the facts giving rise to the claim because of the defendant's intentional concealment of them; and (3) the EEOC's misleading the Appellant about the nature of her rights[32]. The Fifth Circuit has not limited "possible bases," and the court may recognize other bases. Id.

Here, the District Court narrow application of the injury discovery rule to the facts of this case was an abuse of discretion. The undisputed facts show that Appellant was unaware of the facts that gave rise to her RICO injuries and the Appellees mislead Appellant about the nature of her rights.

    1. **The Appellees mislead Appellant about the nature of her rights**.

In July 2012 Appellant reported to Segar that Miles was sexually harassing Student 1[33]. Additionally, Appellant reported to Segar that Miles had (1) threatened her employment multiple times; and (2) promised her job to Student 1 if she had sex with him.[34] Appellant further reported she had confronted Miles with Student 1 about his sexual harassment.[35] Segar testified in her deposition in July 2012, Crochet and Barton were brought in to investigate Appellant for confronting Miles with Student 1[36]. Thus, Crochet and Barton were aware that Miles had threatened Appellant's

---

[32] Basis 2 and 3 applies to the facts of this case
[33] R.Doc. 304-5 p.1
[34] Id. ¶ 5
[35] R.Doc. p.9 ¶6
[36] R. Doc. 304 p.11 ¶3

employment in 2012.

In February 2013, Appellant reported that Miles had sexually harassed Student 2.[37] Crochet and Barton were again bought in this time to conduct an impartial Title IX investigation of Miles.[38] However, this was a conflict of interest[39].

Subsequently, Appellant was instructed to meet Crochet to discuss the Miles Title IX Investigation.[40] At that meeting Appellant undertook a reasonable step[41] to determine her legal rights, when she asked Crochet "What happens next?" Crochet responded Miles' conduct was not "illegal" because the student workers were of the "consenting age" and Miles' conduct was "not illegal, maybe immoral." [42]

Crochet knew Appellant was inquiring about her July 2012 report to Segar, that Miles had threatened her employment. Additionally, Appellant was a witness in an official proceeding who had reported that Miles had sexually harassed Student 1, Student 2, threatened her employment and subjected her to a hostile work environment[43]. Nevertheless, Crochet misled[44] Appellant as to Miles conduct and

---

[37] ROA.5873 ¶6
[38] ROA.6087
[39] ROA.5780 ¶ 147, 5874 ¶ 1
[40] ROA.5787 ¶ 165
[41] *Granger* at 712 (5th Cir. 2011)
[42] ROA.5787 ¶ 165; The Husch Blackwell Report disagreed with Crochet's statement that Miles conduct was legal. ROA.5874 ¶1 On
[43] R.Doc. 304-5 p.1 ¶5. Appellant and Yael Lofton reported to Segar that Miles was subjecting them to a hostile work environment in violation of LSU's PS-73 Policy.
[44] The Husch Blackwell Report disagreed with Crochet and Barton's conclusion in the Miles Report that Miles had not violated federal law. ROA.5874 ¶¶4-5. Joe Alleva emailed former LSU Presidents William Jenkins and F. King Alexander recommending Miles be terminated for

her legal rights.[45] *Reeb v. Economic Opportunity Atlanta, Inc*., 516 F.2d 924,930 (5th Cir. 1975).

Moreover, it was reasonable Appellant in a fragile emotional state[46], would be susceptible to Crochet's misleading legal opinion. The facts here are analogous to *Reeb*. In *Reeb* the plaintiff alleged the EOA actively sought to mislead her as to the funding for a position she was interested in. This led plaintiff to not file a EEOC complaint within ninety-days, as required by the statute. The plaintiff testified at trial that she did not question the explanation given to her, because of her prior employment with EOA which had been terminated for lack of funds. Id. The Fifth Circuit remanded the case finding that: the district court did not make any findings with respect to the allegations that EOA misled the plaintiff or attempted to conceal the alleged discrimination from her, nor did it make findings with respect to when a

---

sexually harassing Student 1 and Student 2. ROA.5875, R.Doc. 304 p. 7 ¶3. LSU terminated Taylor Porter for concealing the Miles Investigation in their offices. ROA.5799 ¶207
[45] Title IX investigation is an official proceeding of the Department of Education. *See* ROA.6504-6505."The statute directs federal agencies that distribute education funding to establish requirements to effectuate the nondiscrimination mandate, and permits the agencies to enforce those requirements through "any . . . means authorized by law," including ultimately the termination of federal funding. § 1682" *Gebser v. Lago Vista Indep. Sch. Dist*., 524 U.S. 274, 280 (1998); DOE "has authority to promulgate and enforce requirements that effectuate the statute's nondiscrimination mandate, 20 U.S.C. § 1682." Id. 292.
[46] As a result of the working conditions in the Athletic Department. Appellant's mental health began to deteriorate in 2013. Appellant was being sexually harassed by then running back coach Frank Wilson and in 2013 Wilson sexually assaulted Appellant in her office. ROA.5769 ¶¶ 88-90; Additionally, Miles since his hiring in 2005 had subjected Appellant to a hostile work environment, including threatening to strike Appellant in her motherfucking mouth. ROA.5814; As a result of Miles and Wilson abuse, Appellant suffered a mental breakdown in 2013. ROA.5876 ¶2 In 2014 Verge Ausberry subjected Appellant to repeated verbal abuse and she once again sought mental health counseling. R.Doc 295-10 p. 1 ¶3

person similarly situated with a prudent regard for his rights would have discovered the discrimination in the absence of misleading statements or concealment on the part of the defendant. Id.

Similar to the plaintiff in *Reeb* , Appellant based on her experience of working with Taylor Porter, relied on Crochet's fraudulent legal opinion. At all material times Appellant was led to believe Crochet was an attorney conducting an impartial Title IX investigation[47]. Crochet was a Senior Partner at the Taylor Porter law firm.[48] Taylor Porter did considerable work[49] for the Athletic Department and essentially served as LSU's General Counsel.[50] Taylor Porter advised LSU and its Athletic Department on all Title IX issues.[51] After Appellant reported Student 1 complaint against Miles, Alleva engaged Taylor Porter to provide training to all Athletic employees on a variety of compliance topics, including sexual harassment.[52] In 2013 the Athletic Department used Taylor Porter to present on the topic of workplace harassment.[53] Taylor Porter assisted LSU in drafting the first version of the LSU PM-73 policy.[54] Thus, it was reasonable that any individual similarly

---

[47]ROA.5874 Fn. 131; ROA.5774 ¶¶ 115-116
[48]ROA.5753 ¶ 4
[49] ROA.5756 ¶ 22
[50] ROA.5874 ¶ 1
[51] ROA.5756 ¶ 22; ROA.5834 ¶1
[52] ROA.5873 ¶5
[53] ROA.5854 ¶5
[54] ROA.5835 ¶ 1

situated as Appellant would have relied[55] on the legal opinion of the lawyer leading the Title IX investigation.

It was not until the release of the Husch Blackwell Report and Miles Report in 2021, that Appellant was put on notice that Crochet had given her fraudulent legal advice[56]. The record shows that Crochet's misleading legal opinion was done with the clear intent was to lull Appellant into inaction from pursuing her legal claims. Therefore, the District Court failure to apply equitable tolling to Appellant's RICO claims was an abuse of discretion.

### B. Fraudulent Concealment

A civil RICO claim accrues when the Appellant discovers, or should have discovered, the injury. A plaintiff may invoke  fraudulent concealment only by proving two elements: (1) the Appellees fraudulently conceals the "facts forming the basis for the claim; and (2) the Appellant cannot access these facts through reasonably diligent investigation. *Petrobras Am., Inc. v. Samsung Heavy Indus*. Co., 9 F.4th 247 (5th Cir. 2021)[57] (*citing State of Texas v. Allan Constr. Co*. , 851 F.2d 1526, 1533–34 (5th Cir. 1988)).

---

[55]  The Louisiana Supreme Court in *Lamont v. Bennet*, 172 So. 3d 620, 637, 638 (La. 2015) found the one-year prescriptive period for legal malpractice was suspended where the attorney's actions were undertaken with the intent to lull the Plaintiff into inaction and prevent her from asserting a legal malpractice claim.

[56] ROA.5787 ¶ 166

[57] See Fn.4

1. <u>Appellees fraudulently concealed facts that formed basis of Appellant's RICO claims</u>

Appellant has alleged with particularity the Appellees engaged in the following affirmative acts to conceal facts that formed the basis of Appellant's RICO claims:

a. Alleva, Segar, Ausberry[58], Crochet and Barton concealed Appellant's July 2012 complaint that Miles was threatening her employment;[59]

b. In 2013 the Appellees engaged in multiple in person meetings, emails, text messages and phone calls to discuss concealing the Miles Report;[60]

c. On May 15, 2013 Appellees agreed to conceal the Miles Report from a Title IX investigation;[61]

d. On May 15, 2013 the Appellees agreed Crochet and Barton would conceal the Miles Report at the Taylor Porter Law Firm downtown Baton Rouge offices.[62] Segar[63] and Alleva[64] both testified in their depositions

---

[58] Ausberry met with Segar to discuss Student 1 complaint against Miles. R.Doc. 304-5 p.1 ¶1
[59] See R.Doc. 304-5 p. 3; Segar, Alleva, Crochet and Barton intentionally did not record Miles' threats against Appellant's employment in the Miles Report. R.Doc. 304 p.11-12. Segar, Alleva and Ausberry did not report Miles threats against Plaintiff employment to LSU HR per the PS-73 policy in 2012. R.Doc. 304-5 pp. 5-7
[60] ROA.5781 ¶ 152
[61] ROA.6087, ROA.6095 ¶3, ROA.5788 ¶¶ 168-173; "evidence of secret agreements" supports Appellant's claims of fraudulent concealment. In *State of Tex. v. Allan* F.2d at 1532 (
[62] Id.
[63] R.Doc.295 p. 9 ¶1
[64] R.Doc.304 p. 5 ¶3

that the TP Memo to File[65] accurately stated their agreement to conceal the Miles Report in Taylor Porter Law Firm downtown Baton Rouge offices;

e. Alleva in testified in his deposition the Miles Report was kept in Taylor Porter's law offices to prevent the information from becoming public;[66]

f. On August 29, 2013 Miles, Crochet, Barton and Alleva  agreed to conceal the Miles Disciplinary Letter  in Ginsberg, Hardin, Barton and Crochet's  law offices. [67] Alleva[68] testified in his deposition that the MDL reflected the agreement of Appellees to conceal the MDL in Ginsberg, Hardin, Barton and Crochet's  law offices.

g. Ginsberg, Hardin, Crochet and Barton concealed the Miles Report in their law offices from  2013 to 2021, until they were forced to release it by a state  court; [69]

h. Appellee Stanley Jacobs stated in *Sports Illustrated*  Crochet, Barton and then LSU President  William  Jenkins  demanded he and others keep the Miles Report a secret.[70]

i.   Lee Mallet a BOS member in 2013 stated he was never told about the

---

[65] ROA.6087
[66] R.Doc. 304 ¶2
[67] ROA.6106 ¶5
[68] R.Doc. 304 p.4 ¶2
[69]ROA.5789 ¶175
[70]ROA.5782 ¶154

Miles Investigation.[71]

j.  Appellees failed to report Appellant's complaints that Miles had sexually harassed Student 1 and Student 2  and threaten her employment to the Office of Civil Rights (OCR).[72]

k.  On December 14, 2020 *USA Today* submitted a public documents request for the Miles Report and the BOS falsely responded  the Miles Report was not subject to public documents request;[73]

l.  In 2021 The BOS directed Barton to oppose *USA Today's writ of mandamus* for the Miles Report;[74]

m. In 2021 the BOS directed Crochet and Barton to notify Ginsberg and Hardin of *USA Today* public documents request per the August 29, 2013 agreement between Ginsberg, Hardin, Barton, Crochet and Alleva;[75] and

n.  On February 4, 2021 Ginsberg, on behalf of Miles, filed a petition to intervene in *Kenny Jacoby v. Galligan*,  opposing *USA Today's* public documents request for the Miles Report; [76]

---

[71] ROA.5783 ¶158
[72] See the 2011 Dear Colleague Letter: LSU was required to submit " to OCR copies of all grievances filed by students alleging sexual harassment or violence, and providing OCR with documentation related to the investigation of each complaint, such as witness interviews, investigator notes, evidence submitted by the parties, investigative reports and summaries, any final disposition letters, disciplinary records, and documentation regarding any appeals." p. 19 ¶1
[73] ROA.5804 ¶232-233
[74] Id.
[75]Id.
[76] Id

Furthermore, the District Court conflated Appellant's RICO injuries with her Title VII injuries and reasoned they were easily discoverable[77]. The District Court wrongly reasoned that Appellant could have gone online and discovered her RICO injuries.[78] However, having relied on Crochet's misleading legal opinion, it was the release of the Miles Report in 2021 alerted Appellant to the co-conspirators agreement and that her complaints against Miles was not included in the Miles Report.

Furthermore, the District Court ruling that Appellant relied on *Joseph v. Bach & Wasserman LLC,* 487 F. App'x 173  (5th Cir. 2012) as support that her RICO claims should have been equitably tolled is factually wrong. Appellant merely cited *Joseph v. Bach & Wasserman* along with several other cases for their  holding that equitable tolling  apply to civil RICO claims.[79]  Nevertheless, the District Court relied on *Joseph v. Bach & Wasserman* and  *Warden v. Barnett,* 252 F.3d 1356 (5th Cir. 2001)  to support its ruling that equitable tolling did not apply to the facts of this case.[80]

However, the only facts those cases have in common with the matter before the bar, is that all of the plaintiffs filed similar claims in state and federal court.

---

[77] ROA.3892-3893; This was a factual error as Appellant specifically alleged that her RICO injuries were to her business and property interest only. ROA.5815 ¶¶ 293-295
[78] ROA.3893  FN. 286. The court reasoned that Appellant could have gone online and compared her pay to other employees in the Athletic Department and discovered her RICO injuries.
[79] ROA.3825
[80] ROA.3898-3901

Otherwise the facts are clearly distinguishable. The plaintiff in *Joseph v. Bach & Wasserman* filed his RICO claims in federal court on May 28, 2011, but alleged in his complaint that he had not suffered any RICO injuries after December 2004. Here, Appellant alleged that her RICO injuries were continuous from 2013 to the filing of her complaint in April 2021.[81] In *Joseph v. Bach Wasserman* the court found that plaintiff's state court complaint filed in December 2004 alleged the same facts as his federal complaint filed seven years later. The plaintiff in *Warden v. Barnett* filed a state complaint in 1991 and then subsequently filed a federal complaint in 1998 based on the same facts alleging RICO injuries.

The Fifth Circuit in both cases reasoned that the plaintiffs state court claims should have alerted them  the statute of limitations had begun to run on their civil RICO claims. However,  Appellant's state and federal claims were both filed in 2021. Moreover,  the District Court did not find that Appellant was aware of  the Miles Report before April 2017.

Furthermore,  neither plaintiff in *Joseph v. Bach Wasserman* and *Warden v. Barnett* alleged that the Defendants misled them as to their legal rights. Nor did the plaintiffs allege any facts in *Joseph v. Bach Wasserman* and *Warden v. Barnett* that show the level and degree of fraudulent concealment[82] that Appellant alleged in her

---

[81] ROA.5779¶ 139

[82] The courts in *Joseph v. Bach & Wasserman* and *Warden v. Barnett* found that fraudulent concealment did not apply because plaintiffs earlier state court claims  tracked plaintiffs later

complaint.

## C. Appellant took reasonable steps to discover her legal rights

Whether the plaintiff undertook reasonable diligence is a fact based inquiry. *Klehr v. AO Smith Corp.*, 521 US 179, 196 (1997); *Mann v. Adams Realty Co., Inc.,* 556 F.2d 288, 296 (5th Cir. 1977). As stated *supra* Appellant undertook reasonable diligence to discover her legal claims, but was misled by Crochet's denial that Miles had violated state and federal law. Crochet had a fiduciary duty not to mislead Appellant. Here, Crochet was a lawyer overseeing an "impartial" Title IX investigation[83]; Appellant was a witness in that Title IX investigation; [84] Appellant was a "responsible employee"[85] under the 2011 Dear Colleague Letter (DCL);[86] Appellant was a complainant against Miles; and Crochet had a duty to be truthful to Appellant under Louisiana Rule of Professional Conduct 4.1 (a)(b). Thus, Crochet had a fiduciary duty to tell Appellant the truth about Miles' violation of federal law and Appellant undertook reasonable diligence to discover her RICO claims but was misled by Crochet.

---

federal RICO claims "word for word" and that put plaintiffs on notice that the statute of limitations was running on their civil RICO claims..

[83] *supra*

[84] *supra*

[85] ROA.5832 Fn.20: A "responsible employee" includes "any employee who has the duty to report to appropriate school officials sexual harassment or any other misconduct by students or employees, or an individual who a student could reasonably believe has this authority or responsibility."

[86] ROA.5832 ¶ A – ROA.5833

## D. The Appellees fraud was a self-concealing conspiracy

The Fifth Circuit defines self-concealing as a wrong "in which deception is an essential element for some purpose other than merely to cover up the act. *In re Pool Prods. Distribution Mkt. Antitrust Litig.*, 940 F.Supp.2d 367, 402 (E.D. La. 2013) (citing *State of Tex. v. Allan* F.2d at 1530 (5th Cir. 2008). Here, the Taylor Porter Memo to File[87] and the Miles Disciplinary Letter[88] show the Appellees agreeing to conceal the Miles Report from a Title IX investigation. Id. They kept this agreement secret for eight years[89]. Former LSU President F. King Alexander stated LSU's Athletic Department handled Title IX complaints "differently" and were "siloing maybe 6 or 7 percent" of all Title IX complaints[90].

Furthermore, Appellees concealing the Miles Report was done more than to just cover up Miles sexual misconduct. The Appellees defrauded Appellant[91] and

---

[87] ROA.6087, ROA.6095 ¶3, ROA.5788 ¶¶ 168-173
[88] ROA.6106 ¶5
[89] ROA.5782 ¶154;  In *State of Tex. v. Allan* F.2d at 1532 (5th Cir. 2008) the court reasoned that "evidence of secret agreements" supported plaintiff's claims of fraudulent concealment.
[90] ROA.3942 ¶151
[91] ROA.5832 ¶ A – ROA.5833. The DCL required LSU to conduct an "impartial  investigation" of  Appellant's complaint that Miles had threatened her employment and was subjecting her to a hostile work environment. By concealing Appellant's 2012 complaints against Miles;  failing to include Appellant's complaint in the Miles Report; and concealing the Miles Report in Crochet, Barton, Ginsberg and Hardin's law offices, the Appellees defrauded Appellant by denying her an "impartial investigation" of her Title IX complaint. The Appellees defrauded the DOE in order to keep its federal funding and/or avoid DOE sanctions.

the DOE. [92]  Therefore, the Appellees fraud was self-concealing and Appellant need not show any affirmative acts to prove fraudulent concealment. Id.

### E. **Appellees conduct was a concealment**.

Denial is a concealment "where the parties are in a fiduciary relationship, or where the circumstances indicate that it was reasonable for the plaintiff to rely on defendant's denial." *Allan*, 851 F.2d at 1532–33. As stated *supra,* Crochet had a fiduciary relationship with Appellant and her denial that Miles conduct was illegal was a concealment. Id.

### F. **Federal Rule 9  RICO**

Civil RICO pleadings must meet Rule 9(b)'s heightened pleading standard, under which Appellants must state with particularity the circumstances' of the allegedly fraudulent conduct.  *Molina-Aranda v. Black Magic Enters*., *L.L.C*., 983 F.3d 779 (5th Cir. 2020) (citing *Williams v. WMX Techs., Inc*. , 112 F.3d 175, 177 (5th Cir. 1997)). Moreover, federal courts have not hesitated to impose sanctions if a RICO claim is patently deficient: "Particularly with regard to civil RICO claims,

---

[92]  The Dear Colleague Letter required LSU to report the complaints against Miles to the OCR. ROA.5776 ¶126, ROA.6434 ¶2.; The Appellees defrauded the DOE in order to keep its federal funding and/or avoid DOE sanctions. LSU was required to submit a written assurance to the DOE that it would operate its educational programs or activities in compliance with Title IX. The Supreme Court has upheld the DOE regulatory power to terminate a LSU's federal financial assistance for failure to execute an assurance of compliance with Title IX. *Grove City College v. Bell*, 465 U.S. 555, 574-575 (1984).

Appellants must stop and think before filing them." [93]   The 5th Circuit in *Smith v. Our Lady of the Lake Hosp*., Inc., 960 F.2d 439, 444 (5th Cir. 1992) issued a stark warning to potential plaintiffs before filing RICO claims:

> "*Given the resulting proliferation of civil RICO claims and the potential for frivolous suits in search of treble damages, greater responsibility will be placed on the bar to inquire into the factual and legal bases of potential claims or defenses prior to bringing such suit or risk sanctions for failing to do so.*"

Thus, even if Appellant had suspected between 2013 and 2017 that she had the basis for a RICO claim, and she did not, without the supporting evidence that had been fraudulently concealed in the Miles Report, Appellant's RICO claims would have been  dismissed on a 12(b)(6) motion and she would have faced certain Rule 11 sanctions.

Moreover, even with the substantial evidence in the record and in the public sphere, Appellant has been forced to defend her RICO claims against sanctions. Crochet, Barton, McKenzie and Miles filed Rule 11 sanctions against Appellant.[94] In the matter of *Lewis v. LSU* et al, 708092 in the 19th JDC East Baton Rouge, Judge

---

[93] *See Pelletier v. Zweifel*, 921 F.2d 1465, 1522 (11th Cir. 1991). The court also held that the district court abused its discretion in refusing to impose sanctions for filing frivolous RICO claims;  *Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564 (5th Cir. 2006) (affirming Rule 11 sanctions against Appellants who pled factually groundless RICO complaint alleging money laundering, terrorist activity, and participation in organized crime); *Chapman & Cole v. Itel Container Int'l*, 865 F.2d 676, 683–85 (5th Cir. 1989) (affirming sanctions against defendant for RICO counterclaim filed based on unverified hearsay);
[94] ROA.7183-7203

Timothy E. Kelley despite the "mountain of evidence[95]" in record falsely accused Appellant and her legal counsel of manufacturing her Louisiana Racketeering Act (LRA) claims. Judge Kelley further accused Appellant's legal counsel of violating the rules of Rules of Professional Conduct for bringing RICO claims against Crochet, Barton and McKenzie.[96] Judge Kelley then granted Crochet, Barton and McKenzie's motion for La. Article 863 sanctions against Appellant and Appellant's legal counsel.[97]

Moreover, the Appellees fraudulently concealed facts that would have led Appellant to discover her RICO injuries. A party responsible for such wrongful concealment is estopped from asserting the statute of limitations as a defense. *Reeb v. Economic Opportunity Atlanta, Inc.*, at 930 (5th Cir. 1975); *State of Tex. v. Allan* at 1532 (5th Cir. 1988). Therefore, assuming the facts in Appellant's SAC are true, it was an abuse of discretion for the District Court to rule the principles of equitable tolling and fraudulent concealment did not apply to Appellant's RICO claims.

---

[95] Judge Kelley in his oral reasons for imposing sanctions on Appellant and her attorney ruled that he reviewed the mountain of evidence in the record.
[96] ROA.6792-6816
[97] ROA.6783; Appellant's application for supervisory writs is pending before the Court of Appeals First Circuit No.2022-CW-1022

**IV.** **The District Court ruling that all of Appellant's civil RICO claims against Leslie Miles, Garrett Danos, Robert Yarborough, Stanley Jacobs, and William Jenkins are time barred is an abuse of discretion.**

The District Court ruled that because Appellant did not make any allegations against Miles, Danos, Yarborough, Jacobs, and Jenkins that she was injured by their RICO conduct after 2013, and then dismissed her RICO claims against them with prejudice.[98] This was a manifest legal error[99]. Further, the District Court's ruling goes against U.S. Supreme Court precedent that holds a RICO Defendant is liable for the violations of RICO statutes by his co-conspirators no matter when those violations occurred. *Salinas v. United States* 522 U.S. 52 (1997). In *Boyle v. United States*, the Supreme Court held "nothing in RICO exempts an enterprise whose associates engage in spurts of activity punctuated by periods of quiescence."[100] A defendant who has joined a conspiracy continues to violate the law "through every moment of [the conspiracy's] existence," *Smith v. United States* 568 U.S. 106, 113 (2013) (citing *Hyde v. United States*,225 U.S. 347, 369, 32 S.Ct. 793, 56 L.Ed. 1114 (1912)). A defendant's membership in the conspiracy and his responsibility for its acts, endures even if he is entirely *inactive* after joining it. Id. at 113. In *Salinas* the

---

[98] ROA.3894-3895
[99] See, e.g., *Pechon v. La. Dep't of Health and Hospitals*, No. 08-0664, 2009 WL 2046766, at *4 (E.D. La. July 14, 2009) (quoting Venegas-Hernandez v. Sonolux Records, 370 F.3d 183, 195 (1st Cir. 2004); *Bank One, Texas, N.A. v. F.D.I.C*., 16 F. Supp. 2d 698, 713 (N.D. Tex. 1998) ("[A] manifest error is an obvious mistake or departure from the truth.") (internal quotation marks omitted)).
[100] 55 U.S. 938, 948 (2009)

Supreme Court held "a conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense.[101]

Furthermore it is settled law in the Fifth Circuit that Miles, Danos, Yarborough, Jacobs, and Jenkins  are liable for all of the predicate acts of  their co-conspirators after April 5, 2017, whether they knew about them or not. *U.S. v. Delgado,* 401 F.3d 290, 296 (5th Cir. 2005); *Chaney v. Dreyfus Service Corp*., 595 F.3d 219, 239 (5th Cir. 2010); *Abraham v. Singh*, 480 F.3d 351, 357 (5th Cir. 2007); *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 675 (5th Cir. 2015) (citing *United States v. Stalnaker*, 571 F.3d 428, 436 (5th Cir. 2009); and *Dale v. Frankel*, 131 F. Supp. 2d 852, 860 (S.D. Miss. 2001). Therefore, the District Court's dismissal of Appellant's RICO claims with prejudice against Miles, Danos, Yarborough, Jacobs, and Jenkins was a manifest legal error.

### a. The District Court  January 19, 2022 Order and Reason denying Appellant's Rule 59(e) motion was an abuse of discretion.

The District Court's denial[102] of Appellant's Motion to Alter or Amend Judgement[103] was an abuse of discretion. A Rule 59(e) motion is properly invoked "to correct manifest errors of law or fact or to present newly discovered evidence. In *TranTexas Gas Corp*., 303 F.3d 571, 581 (5th  Cir. 2002) (citing *Waltman v. Int'l*

---

[101] 522 U.S. 52 (1997)
[102] ROA. 4527
[103] ROA.4407

Paper Co., 875 F.2d 468, 473 (5th Cir.1989) ( quoting *Kenne Corp. v. Int'l Fid. Ins.
Co.*, 561 F. Supp. 656,665 (N.D. Ill. 1982) (internal quotations omitted)).

Moreover, the District Court wrongfully determined Appellant was seeking
to "rehash evidence, legal theories, and arguments that have already been heard[104]."
In support of this wrongful conclusion, the District Court reasoned that: "Plaintiff
filed a supplemental memorandum, citing the *Salinas* case on which she now relies.
It is well established that "[a] party may not use a Rule 59(e) motion to relitigate
prior matters that should have been urged earlier or that simply have been resolved
to the movant's dissatisfaction."[105] However, Appellant cited *Salinas* as controlling
precedent five (5) times [106] in her original memorandum in support.  The District
Court  simply chose to ignore *Salinas* precedent in its Order and Reasons. This was
a  manifest legal error.

Furthermore,  it was the District Court that raised a new legal precedent in
its January 19, 2022 ruling. The District Court for the first time  relied on the
holdings  in *Beck v. Prupis*, 529 U.S. 494, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000)
that state:

'to establish a civil RICO conspiracy, a RICO conspiracy plaintiff [must] allege
injury from an act that is analogous to an act of tortious character, meaning an act
that is independently wrongful under RICO and acts that are "independently

---

[104] ROA.4532 ¶ 1
[105] Id.
[106] ROA.4411 ¶ 2, ROA.4412 ¶ 1, ROA.4414 ¶ 1, ROA.4415 ¶ 1, ROA.4414 Fn. 15

wrongful" under RICO are those predicate acts of racketeering activity listed in § 1961(1)" [107]

It was unfair to Appellant for the District Court to raise a new legal precedent that that it did not rely on in its original Order and Reasons.

In any case *Beck* supports Appellant's arguments that Miles, Danos, Yarborough, Jacobs, and Jenkins are liable for the predicate acts committed by their co-conspirators after April 2017. In denying the plaintiff's appeal, the Court held "Under our interpretation, a plaintiff could, through a §1964(c) suit for a violation of §1962(d), sue co-conspirators who might not themselves have violated one of the substantive provisions of §1962." Id.

Furthermore, the facts in *Beck* are clearly distinguishable from the case at bar. In *Beck* the plaintiff alleged he was terminated as the result of a RICO conspiracy. However, the Supreme Court reasoned that a RICO plaintiff injuries derive from violations of the listed predicate acts, not the conspiracy. Id. Appellant unlike *Beck* has alleged with particularity the predicate acts that caused her injuries. Therefore, the District Court's January 19, 2022 Order and Reasons denying Appellant's Motion to Alter and Amend Judgement was an abuse of discretion and a manifest legal error.

---

[107] ROA.4532 ¶ 2

**V.     The District Court dismissal of Appellant's RICO claims with prejudice against all Defendants was an abuse of discretion.**

The District Court's Order and Reasons[108] dismissing Appellant's RICO claims with prejudice against Danos, Jacobs, Yarborough, Alleva, Segar, Ausberry, Woodward, Crochet and Barton was an abuse of discretion. Appellant plead sufficient material facts to show "direct relation between" Appellants injuries and Appellees racketeering conduct. *Hemi Grp. LLC v. City of New York*, 130 S.Ct. 983,989-990 (2009) (citing *Holmes v. Securities Investor* 503 U.S. 258 (1992).

The facts of this case are analogous to *Waste Management of Louisiana v. River Birch, Inc*., 920 F.3d 958  (5th Cir. 2019). In *Waste Management*  the district court granted Defendants 12(b)(6) motion as to  Defendants alleged bribery of Mayor Ray Nagan. The Fifth Circuit reasoned that Plaintiff had alleged sufficient facts to state a "plausible claim" that the Defendant participated in a RICO scheme. Id. at 963. The court pointed to its reasoning in addressing the District Court granting Defendants summary judgment.

In *Waste Management* the Defendants argued that a campaign contribution to Nagan was insufficient to show  bribery. The Plaintiff's argued that a jury could reasonably conclude from circumstantial evidence that the campaign contribution to Nagan was a bribe. The Fifth Circuit reasoned that under summary judgment it must

---

[108] ROA.6619

construe *Waste Management* evidence as true. The Court looked at evidence made

in  a co-conspirator's factual basis and  deposition. Plaintiff further argued that the

Defendants concealing the true source of the campaign contribution raises an

inference that their contributions was intended to cover up evidence of wrong doing.

Id. 968. In overturning the district court's granting  summary judgment, the Fifth

Circuit stated that " It is critical in cases such as this that inferences from

circumstantial evidence about intent and motives about which reasonable minds

could differ be sorted out by the jury". Id.

However, the Defendants then argued there was no evidence that the payment

proximately caused Nagan to shutter the landfill.  The Court reaffirmed that a RICO

plaintiff:

> "does not need to disprove [a defendant's] explanation of the situation in
> order to survive summary judgment. [A RICO plaintiff] need only present
> evidence that would permit a reasonable finder of fact to accept his
> interpretation of the facts. ... The decision as to whether to believe [plaintiff's
> or defendant's] explanation of the facts requires the type of credibility
> determination by the court that is plainly inappropriate on motion for
> summary judgment. Id at 972[109]

The Fifth Circuit found that evidence that Nagan's conviction of public bribery in

another case "provides an abundant fodder for impeaching his testimony." Id. 969.

Applying the holdings of *Waste Management*,  the Appellant shows that she

---

[109] (citing  *Crowe v. Henry* , 115 F.3d 294, 298 (5th Cir. 1997) ; see also, e.g. , *Whelan v. Winchester Prod. Co* ., 319 F.3d 225, 228 (5th Cir. 2003) (applying general Rule 56 summary judgment standard in RICO case).

has not only alleged sufficient facts to survive a 12(b)(6) motion but the higher

requirements of a Rule 56 motion also.  In 2013 Appellees knowingly violated §1512

(c)(2) when Crochet mislead[110] Appellant during a Title IX investigation. The

essential elements of § 1512 (c)(2 ) as they pertain to Appellant's RICO injuries are

as follows: *Whoever corruptly*[111] *otherwise obstructs, influences, or impedes any*

*official proceeding, or attempts to do so*. Here Crochet knowingly misled[112]

Appellant, who was both a witness[113] and complainant,[114] in an official

proceeding.[115]  Further, Appellees knowingly violated  § 1512 (c)(2 ) when they

purposely failed to include Appellant's complaints against Miles in the Miles

report[116].  Further, Appellees knowingly violated  § 1512 (c)(1 ) and § 1512 (c )(2)

when they concealed the Miles Report in  Crochet, Barton, Ginsberg and Hardin law

offices.[117] Then having violated federal law, the Appellees placed Appellant back

under Miles direct supervision, where he and Alleva injured Appellant's

employment from 2013 to 2019.

Moreover,  it was  a foreseeable and natural consequence that Appellees

---

[110] *Supra*
[111] See *United States v. Bedoy*, 827 F.3d 495, 510 (5th Cir. 2016) the Court defined "corruptly" as  "to knowingly and dishonestly act with the specific intent to obstruct, influence or impede a federal official proceeding."
[112] *Supra*
[113] *Supra*
[114] *Supra*
[115] *Supra:*
[116] This was a material omission that knowingly and corruptly altered the Miles Report.
[117] *Supra*

violations  § 1512(c )(1) and § 1512 (c )(2)  that Miles would continue to injure Appellant's employment. Id. at. 965 Alleva knew Miles would continue to sexually harass student workers and threaten Appellant's employment when he emailed King and Jenkins urging Miles be terminated.[118]

However, the District Court  concluded the Appellees RICO conduct hurt 'the newspaper" and  "Board  of  Supervisors"  but  not  Appellant.[119]  Assuming the allegations in Appellant's SAC are true, it is simply not plausible that a newspaper and  Board  of  Supervisors[120]   were  hurt  by  Appellees RICO  conduct  and  not Appellant.

Furthermore, unlike *Waste Management* Appellant has produced a "smoking gun"[121]. Segar and Alleva testified in their depositions that the Taylor Porter Memo To File and Miles Disciplinary letter  accurately stated  Appellees agreement to conceal the Miles Report from an official proceeding.[122]  Segar produced documents in her deposition that showed Appellant reported that Miles was threatening her

---

[118] R.Doc. 304-1

[119] ROA.6649 ¶ 1

[120] Assuming the allegations in Appellant's SAC are true the District Court has found that co-conspirators can be hurt by their own RICO conduct. Danos, Jacobs and Yarborough were three of the most influential members of the Board of Supervisors. The Board of Supervisors in a judicial admission have admitted that Crochet and Barton were acting as their legal attorneys during the Miles Title IX investigation and communications in the Miles Report and Taylor Porter Billing Records are protected by attorney client privilege. See R.Doc.305 p.5 ¶ 2.

[121] Id. at 968

[122] *Supra*

employment in 2102[123]. However, even if the Court views this evidence as circumstantial, inferences from circumstantial evidence about intent and motives about which reasonable minds could differ should be sorted out by the jury. Id. at 968.

## A. Causation

The District Court ruled the even if Appellant has alleged a RICO conspiracy, she has failed to show Appellees RICO conduct was the direct and proximate cause of injuries to her employment.[124] Causation can be proven with circumstantial evidence. Id. at 965 Here, Appellant has produced both direct and circumstantial evidence that her injuries were caused by Appellees RICO conduct. Appellees knowing that Miles was a sexual predator[125] who had threatened[126] Appellant's employment multiple times, kept Appellant under Miles direct supervision. Therefore, a reasonable jury could infer causation from Appellees disregard of Miles's predatory conduct and his previous threats against Appellant's employment. Id. 970.

It is simply not plausible there was some intervening event between Appellees violations of §1512(c )(1) and §1512(c)(2) and the injuries to Appellant's

---

[123] R.Doc. 304-5
[124] ROA.6648
[125] ROA.5757 ¶¶30-41, ROA.5872 ¶5-5874, ROA.5876 ¶¶ 2-4, ROA.5877 ¶1, R.Doc 304-5
[126] R.Doc.304-5 ¶5

employment. *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 676 (5th Cir. 2015). Appellant was one of the most accomplished senior executives in NCAA football.[127] Appellees saw Appellant as a threat[128] to their criminal enterprise and their clear intent was to drive Appellant from her job.[129]

Moreover, the District Court did not offer an alternative reason for Miles and Alleva motives to injure Appellant's employment. Even if it did, at the 12(b)(6) stage, the assumption is that the allegations in Appellant's SAC are true. Given the amount of evidence in the record, Appellant has more than shown she has a plausible RICO claim. *Waste Management* at 963

Furthermore, a reasonable jury could infer causation where Appellant reported in July 2012 that Miles had threatened her employment multiple times. A reasonable jury could infer causation where Alleva's urged Alexander and Jenkins to terminate Miles.[130]

Furthermore, Appellant could impeach Crochet, Barton and McKenzie's testimony at trial where LSU's terminated[131] the Taylor Porter law firm

---

[127] During Appellant's employment as LSU Football's on campus recruiter, the football program has won three NCAA National Championships and lost one other championship game. ROA.5754 ¶ 14

[128] Appellant's continually reporting Title IX complaints represented a direct threat to Appellees control (ROA.5800 ¶¶ 210-227) over LSU's lucrative (ROA.5771 ¶¶ 97-101) football program.

[129] Whenever, Appellant complained to Ausberry about her mistreatment by Miles, he would respond "go find another job." ROA.5759 ¶ 38, ROA.5787 ¶ 164

[130] R.Doc. 304-1

[131] ROA.5799 ¶207

representation after eighty years. Appellant could impeach Danos, Jacobs and Yarborough testimony where the LSU Board of Supervisors publicly rebuked them for concealing the Miles Report; [132] Appellant could impeach Segar and Ausberry testimony at trial where they were suspended for violating Title IX. [133]

**B. § 1341 and §1343 Violations**

The Taylor Porter Billing records are work product of a criminal enterprise.[134] The TPBR document multiple emails, phone calls and correspondences that went between Barton, Crochet, and Hardin in Louisiana and Ginsberg in New York. Those mailings and wire predicate acts need not be fraudulent in and of themselves; innocuous or "innocent " mailings and wirings are sufficient RICO acts as long as they further a fraudulent scheme. *Smith v. Our Lady of the Lake Hosp*., Inc., 960 F.2d 439, 445 (5th Cir. 1992). However, the District Court ruled that those communications had nothing to do with Appellant.[135] That is a factual and legal error.

Here, the wire and mail communications were done to impede corrupt and influence an official proceeding that Appellant was a complainant[136] and witness[137]

---

[132] ROA.5783 ¶157
[133] ROA.5812 ¶280
[134] See RICO case statement ROA. 6206, ROA.6997 ¶2, ROA.7034 ¶E, R.Doc. 304 p.7 ¶2, R.Doc. 295 p.13 ¶2, ROA.6193 ("LSU Contacts"), ROA.6197 (iii (c )), ROA.6204 ¶6
[135] ROA. 6655-6656
[136] *Supra*
[137] *Supra*

in. Circumstantial evidence can be sufficient to prove fraudulent intent in mail and wire fraud cases. *Crowe v. Henry,* 115 F.3d 294 (5th Cir. 1997). Here Appellant was defrauded[138]by not having her complaints reviewed in an "impartial proceeding." Thus, a reasonable jury could infer causation  because the the wire and mail communications were done to protect Miles from Appellant's complaints and Miles and Alleva then injured Appellant's employment. Causation can be proved by circumstantial evidence. Id. at 971

Furthermore, the District Court acknowledged that Jefferey Scott[139] sent Appellant emails while conducting a fraudulent PM-73 investigation, but stated no reason why Appellant was not injured by them.[140] Assuming, that the facts in Appellant's pleadings are true, a reasonable jury could conclude that the mail and wire communications as alleged, were the direct and proximate cause of her RICO injuries.[141]

### C. Fraudulent PM-73 investigation

Appellees initiated a fraudulent PM-73 investigation of Appellant causing injury to her employment.[142] Appellant alleged that Ausberry and Segar knowingly

---

[138] *Supra*
[139] ROA.6656 ¶1
[140] Id.
[141] *infra*
[142] ROA.5809 ¶¶ 258-284, ROA.5872 ¶3, ROA.5884 ¶3 ("October 2018 Title IX Investigation of Sharon Lewis") – ROA.5891

gave false testimony in official proceeding in violation §1512(c )(2)[143]. However, the District Court ruled that Ausberry and Segar's RICO conduct was not the direct and proximate cause Appellant's RICO injuries.[144] This was an abuse of discretion.

At the 12(b)(6) stage Appellant was only required to state a "plausible RICO claim. *Waste Management* at 963. However, the District Court improperly surmised the necessary actions Appellees had to take before Ausberry and Segar RICO conduct would have injured Appellant's employment. But as stated *supra* it is the jury's job to make that factual determination, not the District Court in a 12(b)(6) motion. *Waste Management* F.3d 968.

Assuming the facts in Appellant's SAC are true, a reasonable jury could conclude that Ausberry and Segar's violation of § 1512 (c )(2) caused a PM-73 complaint to be placed in her personnel file that injured her employment.[145] Instead, the District Court before any discovery had taken place, reached a legal conclusion that Appellees RICO conduct was not the direct and proximate cause of Appellant's RICO injuries. This was an abuse of discretion.[146]

As stated *supra* causation can be proved by circumstantial evidence. Assuming that the facts in Appellant's SAC are true, a reasonable jury could infer

---

[143] Id.
[144] ROA.6651
[145] ROA.5815 ¶ 294
[146] Appellant is not required to prove her case to defeat a 12(b)(6) motion.

causation because the fraudulent PM-73 investigation of Appellant was reported in local and national news;[147] a reasonable jury could infer causation from the disregard by Segar and Ausberry to Appellant's report in 2012 that Miles had threatened Appellant's employment;[148] and a reasonable jury could infer causation because Segar and Ausberry were suspended for violating Title IX regulations.[149] Therefore, the District Court ruling that Segar and Ausberry RICO conduct was not the direct and proximate cause of injuries to Appellant's employment was an abuse of discretion.

### D.   § 1512 (a)(2)(A) and §1512(a)(2)(B)(i) claims

Appellant has alleged a plausible RICO claim that Ausberry and Miles knowingly violated § 1512 (a)(2)(A) and §1512(a)(2)(B)(i).[150] Appellant has alleged Ausberry's threatening and intimidating statements that she would never be promoted because she filed too many Title IX complaints, including against him[151] was the direct and proximate cause of her RICO injuries. Assuming that plethora of facts in the record documenting[152] Ausberry's threats and intimidation against Appellant are true,   it was an manifest legal error and abuse of discretion for the

---

[147] Id. ¶ 290-291
[148] R.Doc. 295-10. Segar and Ausberry were aware that Miles had threatened Appellant's employment and they failed to report it to LSU HR per the PS-73 policy (R.Doc 304-5)  that was in place.
[149] *Supra*
[150] ROA.5814 ¶¶ 285-289; ROA.7041-7046
[151] ROA.7045
[152] ROA.7044

District Court to rule[153] that Ausberry did not execute his threats against Appellant employment.

Assuming that the facts in Appellant's SAC are true, a reasonable jury could infer causation[154] for Ausberry's disregard of Appellant's report that Miles was threatening her employment;[155] a reasonable jury could infer causation because of Ausberry's repeated verbal abuse and intimidation of Appellant in 2014;[156] a reasonable jury could infer causation because Ausberry's knowingly gave false testimony against Appellant in a PM-73 investigation:[157] a reasonable jury could infer causation by Ausberry's suspension[158] for failing to follow Title IX regulations; a reasonable jury could infer causation because of Husch Blackwell findings that Ausberry's failure to report a Title IX violation in another matter could have had "catastrophic consequences;"[159]and a reasonable jury could infer causation because Appellant did in fact file multiple Title IX complaints against Ausberry and LSU took no action.[160]

Assuming that the facts in her SAC are true, its simply not plausible that a reasonable jury could not have found that Ausberry's RICO conduct was the direct

---

[153] ROA.7174
[154] *Waste Management* F.3d 970
[155] R.Doc. 295-10. *supra*
[156] R.Doc. Ausberry conduct was not reported to LSU HR per the PS-73 policy.
[157] *Supra*
[158] *Supra*
[159] ROA.5899 Fn.171
[160] ROA.7044.

and proximate cause of injuries to Appellant's employment in 2020.

### E. District Court dismissal of July 12, 2022 motion to alter or amend judgment was an abuse of discretion and manifest legal error.

For the reasons stated *supra* The District Court Court's denial[161] of Appellant's July 12, 2022 Motion to Alter or Amend Judgment[162] was an abuse of discretion and a manifest legal error.

## VI.    Conclusion

The District Court dismissing Appellant's RICO claims against Appellees was an abuse of discretion. Assuming that the facts in Appellant's pleadings are true, Appellant has stated sufficient facts to state a claim that (1) equitable tolling applies to Appellant's RICO claims; (2) Danos, Yarborough, Jacobs, and Miles are liable for Appellant's RICO injuries after 2013; and (3) Appellees RICO conduct was the direct and proximate cause of Appellant's RICO injuries. Therefore, the District Court's Order and Reasons dismissing Appellant's RICO claims against all Appellees should be reversed and this matter be remanded back to the District Court for further proceedings.

---

[161] ROA.7174
[162] ROA.7037

/s/ Larry English
Larry English, LSB No. 22772
LARRY ENGLISH, ATTORNEY AT LAW
423 W. 127 Street, 7th Floor
New York, New York 10027
917-531-3909 (office)
englishlaw2008@gmail.com

## Certificate of Service

This is to certify that the foregoing instrument has been served via the Court's

ECF filing system in compliance with Rule 25(b) and (c ) of the Federal Rules of

Appellate Procedure, on December 7, 2022, on all registered counsel of record, and has

been transmitted to the Clerk of the Court.

/s/ Larry English
**Larry English**

## Certificate of Compliance

1. This brief complies with the type-volume limitation of FED. R. APP. P.
32( )(7)(B) because:

- this brief contains 10,527 words, excluding the parts of the brief exempted by
  FED. R. APP. P. 32(f).

2. This brief also complies with the typeface requirements of FED. R. APP P.
32(A)(5) and the type requirements of FED. R. APP. P. 32(A)(6) because:

- this brief has been prepared in a proportionally spaced typeface using
  Microsoft Word 2010 with a 14 point font named Times New Roman.

*/s/ Larry English*
**Larry English**
**Counsel of Record for Plaintiff-Appellant**
**Sharon Lewis**

Dated: December 6, 2022